### In re ATLANTIC PORTFOLIO ANALYTICS & MANAGEMENT, INC., Debtor.

### No. 6:06–BK–01549–ABB.

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

March 28, 2007.

---

**11.** $644,951.26(total liens and homestead exemption)-$250,000.00 (value of the property).

Caryl E. Delano, Addison & Delano, P.A., Tampa, FL, for Debtor.

Jacqueline E. Ferris, Latham Shuker Eden & Beaudine LLP, Orlando, FL, Mariane L. Dorris, Latham Shuker Eden & Beaudine LLP, Orlando, FL, for Petitioning Creditor.

R. Scott Shuker, Latham Shuker Eden & Beaudine LLP, Orlando, FL, for trustee.

## ORDER

ARTHUR B. BRISKMAN, Bankruptcy Judge.

This matter came before the Court on the Involuntary Petition (Doc. No. 1) ("Petition") filed by R.W. Cuthill, Jr. ("Cut-

hill"), on behalf of Evergreen Security, Ltd. ("Evergreen") as the petitioning creditor, against Atlantic Portfolio Analytics & Managements, Inc., a/k/a APAM, Inc., the alleged Involuntary Debtor herein ("Debtor" or "APAM"), and the Debtor's Answer thereto (Doc. No. 6). Evidentiary hearings were conducted on July 26, 2006 and February 22, 2007 at which counsel for the Debtor, Cuthill, counsel for Cuthill, and Leigh R. Meininger, the Chapter 7 Trustee, were present.[1]

The matter was taken under advisement and the parties were invited to submit and serve on each other proposed findings of fact and conclusions of law ("FOFCOL") by March 8, 2007. The parties filed their FOFCOL on March 8, 2007. The Debtor, on March 16, 2007, filed the Debtor's Objections to Evergreen's FOFCOL (Doc. No. 61) ("Objection"). The Debtor did not seek leave of Court to file the Objection outside of the March 8, 2007 submission deadline. Evergreen filed a Motion to Strike the Objection (Doc. No. 62). The Objection was untimely filed and is due to be stricken.

The Court makes the following findings and conclusions after reviewing the pleadings and evidence, hearing live testimony and argument, and being otherwise fully advised in the premises.

## FINDINGS OF FACT

### Case Background

Evergreen, a British Virgin Islands International Business Corporation, filed a

---

1. The law firm of GrayRobinson was original counsel for the Debtor and filed an Answer on the Debtor's behalf. GrayRobinson filed a Motion to Withdraw as counsel to the Debtor on February 4, 2007 (Doc. No. 42). GrayRobinson also filed motions to withdraw in the involuntary bankruptcy cases filed against Jon M. Knight and J. Anthony Huggins. It filed a Notice (Doc. No. 44) in which J. Anthony Huggins stated he had no objection to the withdrawal and Jon M. Knight stated: "I

have retained Addison & Delano, P.A. to represent me, Mataeka, APAM and IPA in matters going forward. Consequently, I rescind my objection to your firm's withdrawal from all cases." A hearing on the withdrawal motions was held on February 13, 2007 and the motions were granted. The law firm of Addison & Delano, P.A. entered its appearance as counsel for APAM on February 12, 2007 (Doc. No. 43).

voluntary Chapter 11 bankruptcy case on January 23, 2001. Cuthill was appointed the Chapter 11 Trustee by Order entered on March 14, 2001 and sole Director and President of Evergreen pursuant to Evergreen's confirmed Plan. Cuthill is the representative of the Evergreen estate and is charged with, among other things, retaining and enforcing causes of action for the benefit of Evergreen's creditors.[2] Evergreen was found to be a Ponzi scheme.

Cuthill instituted Adversary Proceeding No. 6:01–ap–00232–ABB (the "Mataeka AP") against APAM, Jon M. Knight ("Knight"), J. Anthony Huggins ("Huggins"), and Mataeka, Ltd. ("Mataeka") seeking the avoidance and recovery of fraudulent transfers. The focus of the Mataeka AP was the 1997 transfer of $6,500,000.00 from Evergreen Trust to Mataeka and the subsequent transfers of the funds to APAM, Knight, Huggins, and others.[3] Knight and Huggins characterized the transfer as a "loan."

Huggins and Knight were found to be key players in the Evergreen Ponzi scheme and orchestrated the unlawful transfer of $6,500,000.00 from Evergreen Trust to themselves and various entities they controlled. A Memorandum Opinion and Judgment (collectively, "the Mataeka Judgment") were entered on March 22, 2006 awarding judgment to Evergreen and against the defendants.[4] Judgment was entered against the Debtor, Knight, and Mataeka (found to be the Debtor's and Knight's alter ego), jointly and severally, in the amount of $4,889,053.90, plus pre-judgment interest in the amount of $3,052,467.69, and against APAM in the amount of $2,500,000.00. Post-judgment interest is accruing. The Mataeka Judgment is a debt owed to Evergreen.

The defendants appealed the Mataeka Judgment and the appeal is pending in the District Court.[5] They did not seek a stay of the Mataeka Judgment.

APAM is a Florida Subchapter S corporation engaged in the business of providing investment advisory and management services. APAM provided accounting and ministerial services to both Mataeka and an entity named International Portfolio Analytics Ltd. ("IPA"). APAM conducts business from 201 East Pine Street, Orlando, Florida 32801. Huggins is the President of APAM. Knight is the Chief Investment Officer of APAM. Knight and Huggins are the beneficial owners of APAM, and at all times relevant hereto, they controlled APAM.

APAM and the other Mataeka AP defendants have not contested a debt is owed to Evergreen. They have contested the amount owed, the reason for the debt, and the characterization of the Mataeka "loan" transaction. APAM, Mataeka, Knight, and Huggins, in November 2002, attempted to tender to Cuthill check number 0091 in the amount of $1,539,955.49 as "payment in full" of the Mataeka "loan." Cuthill refused to accept the check.

GrayRobinson, former counsel for the Debtor, Knight, Mataeka, IPA, and Huggins, delivered to Cuthill on June 26, 2006 Check No. 0098 in the amount of $1,095,983.40 as payment on the Writ of

---

**2.** Evergreen's Exh. No. 2 (Confirmation Order) at p. 7 ¶ A.A, p. 13 ¶¶ 14–15.

**3.** Evergreen created a wholly owned trust named Evergreen Trust in April 1994 for the purpose of pooling investor funds, purchasing various investments and holding some of Evergreen's assets.

**4.** Mataeka AP Doc. Nos. 87, 88; Evergreen's Exh. No. 1.

**5.** District Court Case No. 6:06–cv–00837–JA–DAB.

Garnishment issued against GrayRobinson. Cuthill applied the payment to the Mataeka, Knight, and Huggins liability for the Mataeka Judgment and notated the payment as a payment made by Mataeka. The Debtor did not object to GrayRobinson's payment.

### Involuntary Petitions

Evergreen holds a liquidated claim against the Debtor pursuant to the Mataeka Judgment. Evergreen, through Cuthill, filed three involuntary Chapter 7 bankruptcy petitions against Knight, Huggins and APAM on June 28, 2006 ("Petition Date") as a means to seek collection of the Mataeka Judgment.[6] Evergreen, taking into account the GrayRobinson garnishment payment, was owed a minimum of $6,845,538.19 on the Mataeka Judgment on the Petition Date.

Cuthill believes Knight and Huggins have interests in off-shore trusts, which interests may be subject to turnover as property of the estate.[7] A tax return obtained by Cuthill reflects a balance in excess of $4,700,000.00 in the Arctic Trust of which Huggins is the Settlor and a beneficiary.[8] Cuthill has exhausted Evergreen's non-bankruptcy collection remedies within the United States.[9]

The involuntary debtors filed answers challenging the petitions. A joint evidentiary hearing on the Knight and Huggins involuntary petitions commenced on July 26, 2006 and completed on March 22, 2007. The APAM evidentiary hearing was convened and completed on March 22, 2007.[10]

**6.** Cuthill instituted the involuntary cases: *In re Jon M. Knight,* Case No. 6:06–bk–01547–ABB; *In re J. Anthony Huggins,* Case No. 6:06–bk–01546–ABB; *In re Atlantic Portfolio Analytics & Management, Inc.,* Case No. 6:06–bk–01549–ABB.

**7.** Evergreen filed emergency motions in the Huggins and Knight involuntary cases seeking the appointment of an interim trustee, which the involuntary debtors opposed. A joint hearing on the emergency motions was conducted on July 12, 2006 and Evergreen's motions were granted. The United States Trustee appointed Leigh R. Meininger as the Interim Chapter 7 Trustee in the Huggins and Knight involuntary cases.

**8.** Huggins confirmed this information. *See* July 26, 2006 transcript at p. 112.

**9.** *See* July 26, 2006 transcript at p. 112: Counsel for Cuthill inquired of Huggins regarding the Mataeka Judgment: "You have no assets in the United States sufficient to pay that debt, do you?" Huggins responded: "No, I do not." Counsel for Cuthill continued: "And if Mr. Cuthill is to proceed in State Court and execute on personal property, you don't have personal property located in any county in Florida near enough to satisfy that debt, do you?" Huggins responded: "If I understand the question, I don't have the capacity to pay the debt, if that's the—" Counsel: "But there is the trust that is in the Bahamas, correct, the Arctic Trust?" Huggins: "Yes."

Counsel for Cuthill made similar inquiry of Knight. *See* July 26, 2006 transcript at p. 98: "And you have no assets in the United States to satisfy that debt, correct?" to which Knight responded: "That's correct." Counsel for Cuthill: "Absent winning the lottery or the money from the trust coming back, there's no means for Mr. Cuthill to collect on his judgment, is there?" Knight: "There are no current assets available."

**10.** The completion of the Knight and Huggins evidentiary hearings and the commencement of the APAM evidentiary hearing were delayed due to the filing (on July 27, 2006) of the Motion for Recusal, Motion to Disqualify, Disclosure of All Ex Parte Communications and Revocation of all Prior Orders filed by the Debtor, Mataeka, Huggins, APAM, and International Portfolio Analytics, Inc. seeking, among other things, the recusal of the undersigned in all proceedings in which the movants are parties. The involuntary cases were held in abeyance during the pendency of the Recusal Motion. An Order denying the Recusal Motion was entered on February 27, 2007. The Order was not appealed and constitutes a final, non-appealable order. Cuthill filed a motion in the Mataeka Appeal seeking to supplement the appellate record with the Febru-

Discovery requests were propounded by Cuthill on APAM's counsel, Knight, Huggins, and on APAM's accountant LBA Certified Public Accounts, P.A. APAM sought to prohibit Cuthill from obtaining the accounting files through a protective order request. APAM, Huggins, and Knight were mostly unresponsive to the discovery requests. Huggins and Knight are highly educated and experienced in financial and business matters. The documents produced are incomplete and their explanations for failing to produce documents are unpersuasive.[11] Their inability during depositions to recall information and transactions relating to APAM is suspicious. Their failures to comply with and respond to discovery requests were purposeful.

APAM presented no evidence with respect to its assets, liabilities, or business practices. Cuthill testified based upon his review and analysis of APAM Wachovia bank statements, responses to interrogatories, APAM's 2004 and 2005 federal tax returns, Knight's 2004 and 2005 federal tax returns, and Huggins' 2004 and 2005 federal tax returns.

Knight and Huggins testified APAM ceased doing business in 2001 or 2002. Huggins testified he owned 51 % of APAM and sold his interest in the company to Knight.[12] He could not or would not disclose the terms of the sale, the consideration paid, and the disposition of the company's assets. He testified APAM ceased operations in 2002. Despite Knight's and Huggins' contentions APAM ceased operations, their actions and the tax returns obtained by Cuthill reflect APAM was operating in 2003 and 2004. Huggins and Knight used APAM in 2003 and 2004 to pay their personal legal fees and then deducted such payments as expenses on their personal federal income tax returns.[13]

Huggins responded to interrogatories as the purported President of APAM in May 2006 and asserted APAM did not have a bank account. Knight, as a purported shareholder of APAM, asserted in interrogatories in November 16, 2006 APAM did not have a bank account. Cuthill established APAM has a bank account and a money market account from at least September 2002 through August 2006 and that more than $3,000,000.00 flowed through the accounts for the benefit of Knight and Huggins.[14]

APAM admitted it has made no payments on the Mataeka Judgment. Knight and Huggins indicated APAM has no assets which can be used to satisfy the Mataeka Judgment.

APAM's core objection to the involuntary petition is the Mataeka Judgment is subject to a bona fide dispute. APAM, in support of his bona fide dispute contention, reiterated the same arguments made in the Mataeka Judgment appeal. It relied solely on the arguments contained in the Appellants' Initial Brief and did not attempt to offer any evidence beyond what was previously admitted into evidence in the Mataeka AP. It presented no new evidence or legal authority establishing the Mataeka Judgment is subject to a bona fide dispute.

---

11. *See* Evergreen's Exh. Nos. 7, 8.

12. Evergreen's Exh. No. 4 at p. 31 (in the Huggins involuntary case).

13. Evergreen's (in the Huggins involuntary case) Exh. No. 4 at p. 52; Exh. No. 7, 8: ary 27, 2007 Order, which was granted by the District Court.

$536,039 was deducted by the Debtor for legal fees in the 2003 Income from Passthroughs schedule and $622,739.00 was deducted for legal fees in the 2004 Income from Passthroughs schedule.

14. Evergreen's Exh. Nos. 9–15, and 22.

272

***Summary***

APAM conceded it has fewer than twelve creditors. It conceded it owes a debt to Evergreen pursuant to the Mataeka Judgment. Evergreen's claim is not contingent as to liability and Cuthill established a bona fide dispute regarding the debt does not exist. APAM has provided no new evidence or legal authority in support of reversal of the Mataeka Judgment. It has failed to identify a genuine issue of material fact that bears upon its liability to Evergreen or demonstrated a meritorious contention as to the application of law to undisputed facts. The Mataeka Judgment debt is not subject to a bona fide dispute.

The Mataeka Judgment is APAM's only debt. APAM conceded it has not made payment on the Mataeka Judgment. APAM, based upon the totality of the circumstances, is generally not paying its debts as they come due.

Special circumstances exist in support of a finding Cuthill is entitled to an Order for Relief against the Debtor. APAM, through Huggins and Knight, has attempted to thwart collection of the Mataeka Judgment through fraud, trick, artifice and/or sham. APAM, contrary to Knight and Huggins' assertions, continued to operate, as evidenced by its tax returns and Knight's and Huggins' tax returns. APAM was generating substantial sums, which Knight and Huggins used to pay personal legal expenses and then claim deductions for such costs in their personal returns. APAM purposefully withheld information and failed to provide complete responses to discovery requests. APAM has no assets in the United States to satisfy the Mataeka Judgment debt. APAM, through Knight and Huggins, structured its financial affairs to ensure Cuthill has no adequate collection remedies other than through an involuntary bankruptcy proceeding.

## CONCLUSIONS OF LAW

### 11 U.S.C. Section 303(b)(2)

Cuthill, on behalf of Evergreen, filed the Involuntary Petition against the Debtor pursuant to Section 303(b)(2) of the Bankruptcy Code. Section 303(b)(2) permits an entity holding a claim against a debtor to file an involuntary petition as the sole petitioning creditor where: (i) the debtor has fewer than twelve creditors; (ii) the filing creditor holds the aggregate of at least $12,300.00 of the claims; and (iii) the claims held by the filing creditor are not contingent as to liability or the subject of a "bona fide dispute as to liability or amount...." 11 U.S.C. §§ 303(b)(1), (2) (2005). Section 101(5) broadly defines the term "claim" to include a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A).

 The Bankruptcy Code does not define "bona fide dispute." The majority of courts, including this Court, have adopted an objective test for determining whether a bona fide dispute exists.[15] The

---

15. 2 COLLIER ON BANKRUPTCY ¶ 303.03[2][b], at 303–28–29 (15th ed. rev.2005). Circuit Courts of Appeals adopting the objective test include: *Platinum Fin. Serv. Corp. v. Byrd (In re Byrd)*, 357 F.3d 433, 437 (4th Cir.2004); *Key Mech. Inc. v. BDC 56 LLC (In re BDC 56 LLC)*, 330 F.3d 111, 117–18 (2d Cir.2003); *Liberty Tool & Mfg. v. Vortex Fishing Sys., Inc.* *(In re Vortex Fishing Sys., Inc.)*, 277 F.3d 1057, 1064 (9th Cir.2002); *Subway Equip. Leasing Corp. v. Sims (In re Sims)*, 994 F.2d 210, 220–21 (5th Cir.1993); *Rimell v. Mark Twain Bank (In re Rimell)*, 946 F.2d 1363, 1365 (8th Cir.1991); *B.D.W. Assocs., Inc. v. Busy Beaver Bldg. Ctrs., Inc.*, 865 F.2d 65, 66–67 (3d Cir.1989); *Bartmann v. Maverick Tube*

Court of Appeals for the Third Circuit articulated the objective test as: a bona fide dispute exists "[i]f there is a genuine issue of material fact that bears upon the debtor's liability, or a meritorious contention as to the application of law to disputed facts...." *B.D.W. Assocs.*, 865 F.2d at 66–67. Articulated another way: "[T]he bankruptcy court must determine whether there is an objective basis for either a factual or legal dispute as to the validity of [the] debt." *In re Busick*, 831 F.2d 745, 750 (7th Cir.1987).

■ "Thus a bona fide dispute exists only when there are substantial factual or legal questions that bear upon the debtor's liability." *In re Byrd*, 357 F.3d at 437. "A bona fide dispute must exist as to the validity of an entire claim and not merely some of the claim." *In re Cohn–Phillips, Ltd.*, 193 B.R. 757, 763 (Bankr.E.D.Va. 1996).

■ "Establishing the existence or absence of a bona fide dispute involves a shifting burden of proof." *In re Biogenetic Techs., Inc.*, 248 B.R. at 856. The petitioning creditor has the initial burden to establish a prima facie case that a bona fide dispute *does not* exist as to both liability and amount. *In re Byrd*, 357 F.3d at 438; *In re BDC 56 LLC*, 330 F.3d at 118. Once a prima facie case is established the burden shifts to the debtor to demonstrate a bona fide dispute *does* exist. *In re Byrd*, 357 F.3d at 439; *In re Rimell*, 946 F.2d at 1363. "Because the standard is objective, neither the debtor's subjective intent nor

his subjective belief is sufficient to meet this burden...." *Id.* at 1365. "The bankruptcy court need not resolve the merits of the bona fide dispute, but simply determine whether one exists." *In re Byrd*, 357 F.3d at 437.

■ Some courts have determined a claim that has been reduced to an unstayed judgment cannot be the subject of a bona fide dispute. *In re Norris*, 183 B.R. 437, 452–54 (Bankr.W.D.La.1995); *In re Galaxy Boat Mfg. Co. Inc.*, 72 B.R. 200, 202 (Bankr.D.S.C.1986). "A claim based on an unstayed judgment as to which an appeal has been taken by the debtor is not the subject of a bona fide dispute." *In re Drexler*, 56 B.R. 960, 967 (Bankr.S.D.N.Y. 1986). "It would be contrary to the basic principles respecting, and would effect a radical alteration of, the long standing enforceability of unstayed final judgments" for a bankruptcy court to find such judgment was, until reversed, subject to a bona fide dispute. *Id.*

### 11 U.S.C. Section 303(h)

Section 303(h) provides, after the trial on an involuntary petition, "the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed, only if—(1) the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute as to liability or amount." 11 U.S.C. § 303(h)(1).[16]

Corp., 853 F.2d 1540, 1543–44 (10th Cir. 1988); *In re Busick*, 831 F.2d 745 (7th Cir. 1987). The Bankruptcy Appellate Panel for the Sixth Circuit in *Booher v. Eastown Auto Co. (In re Eastown Auto Co.)*, 215 B.R. 960, 965 (6th Cir. BAP 1998), the District Court for the First Circuit Court of Appeals in *Efron v. Gutierrez*, 226 B.R. 305 (D.P.R.1998), and the United States Bankruptcy Court for the Middle District of Florida, Tampa Division in *In re Biogenetic Techs., Inc.*, 248 B.R. 852, 856

(Bankr.M.D.Fla.1999) have also adopted the objective approach. This Court adopted the objective test in *In re Manhattan Indus., Inc.*, 224 B.R. 195 (Bankr.M.D.Fla.1997).

**16.** Collier explains: "[W]hile the term 'bona fide dispute as to liability or amount' is the same in subsections (b) and (h) of section 303, it relates to satisfying different requirements under the Code and may involve entirely different parties or a party with different types

■ The courts apply a flexible totality of the circumstances test in determining whether a debtor is "generally not paying" his debts, which focuses on the number of unpaid claims, the amount of the claims, the materiality of nonpayment and the overall conduct of the debtor's financial affairs. *In re Concrete Pumping Serv.,* 943 F.2d 627, 630 (6th Cir.1991); *Fed. Fin. Co. v. DeKaron Corp.,* 261 B.R. 61, 64 (S.D.Fla.2001).

■ The courts recognize it may be difficult for a single-creditor petitioner to establish the requirements of Section 303(h), particularly whether the debtor is generally paying his debts as they come due.[17] Although the plain language of Section 303(b) allows a single-creditor filing, some courts have carved out exceptions and found 303(h) is satisfied where special circumstances exist. 2 COLLIER ON BANKRUPTCY ¶ 303.04[6], at 303–44. Special circumstances include: (i) the lack of an adequate remedy for the creditor pursuant to state or federal law if the order for relief is not granted; or (ii) a showing of fraud, trick, artifice or sham by the debtor. *In re Smith,* 123 B.R. 423, 425–26 (Bankr. M.D.Fla.1990); *In re R.V. Seating, Inc.,* 8 B.R. 663, 665 (Bankr.S.D.Fla.1981); *Matter of 7H Land & Cattle Co.,* 6 B.R. 29, 34 (Bankr.D.Nev.1980).

### Conclusion

Cuthill is the representative of the Evergreen estate pursuant to the confirmed Plan, the Confirmation Order, and 11 U.S.C. Section 1123(b)(3)(B). Evergreen, as of the Petition Date, held a liquidated claim, that is not contingent as to liability, against the Debtor by virtue of the Ma-

taeka Judgment. APAM has fewer than twelve creditors and Evergreen's claim exceeds the Section 303(b) statutory aggregate amount of $12,300.00. APAM is indebted to Evergreen pursuant to the Mataeka Judgment.

The core issue for determination is whether Evergreen's claim is the subject of a bona fide dispute. The Mataeka Judgment is an unstayed judgment that is enforceable against the Debtor. Cuthill established a bona fide dispute does not exist regarding both the liability and the amount of the debt owed by the Debtor to Evergreen. The Debtor failed to demonstrate a bona fide dispute exists. APAM simply reiterated the Appellants' bases for challenging the Mataeka Judgment on appeal. APAM did not establish there is an objective basis for either a factual or legal dispute as to the validity of a Mataeka Judgment debt. Evergreen's claim is not subject to a bona fide dispute as to liability or amount.

Cuthill has established he is entitled to relief pursuant to 11 U.S.C. Section 303(b)(2). Evergreen qualifies to file an involuntary petition pursuant to Section 303(b)(2).

Cuthill has established the requirements of 11 U.S.C. Section 303(h). The totality of the circumstances reflects APAM was not generally paying its debts as they came due as of the Petition Date. Special circumstances exist for finding the requirements of 303(h) have been met. Cuthill lacks an adequate remedy outside of bankruptcy for collecting on the Mataeka Judgment and the only collection means exist within the bankruptcy forum. Cuthill established APAM has engaged in fraud,

---

of claims." 2 COLLIER ON BANKRUPTCY ¶ 303.03[2][b], at 303–27.

**17.** "[I]t is important to distinguish between the ability of a single creditor to commence a case under section 303(b) and the ability of that one creditor to satisfy the elements of section 303(h)." 2 COLLIER ON BANKRUPTCY ¶ 303.04[6], at 303–44.

trick, artifice and/or sham in an attempt thwart collection of the Evergreen debt. An Order for Relief is due to be entered.

Accordingly, it is

**ORDERED, ADJUDGED** and **DE-CREED** that Evergreen's Motion to Strike (Doc. No. 62) the Objection filed by the Debtor is hereby **GRANTED** the Debtor's Objection (Doc. No. 61) is **DE-NIED**; and it is further

**ORDERED, ADJUDGED** and **DE-CREED** that each of the elements of 11 U.S.C. Sections 303(b) and (h) have been established and an Order for Relief against Atlantic Portfolio Analytics & Management, Inc., a/k/a APAM, Inc. shall be entered. The Clerk of Court is hereby directed to issue an Order for Relief on the Involuntary Petition.